# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| RICHARD PAUL GLUNK, | : | |
| | : | |
| Debtor. | : | Case No. 05-31656-KCJ |

## ORDER

AND NOW, this _____ day of _____ 2005, upon consideration of the Motion to Dismiss Debtor's Bankruptcy Case Pursuant to 11 U.S.C. 707(a) of Daniel H. Fledderman and Colleen M. Fledderman, Co-Administrators of the Estate of Amy Marie Fledderman, and Colleen M. Fledderman in her own right, and any response thereto, it is hereby ORDERED, ADJUDGED and DECREED that the Motion is GRANTED and it is

FURTHER ORDERED that Debtor's above captioned chapter 7 bankruptcy case is DISMISSED.

_____
The Honorable Kevin J. Carey
United States Bankruptcy Judge

Interested parties:

Brian R. Elias, Esquire
Kevin S. Anderson, Esquire
Elliott Greenleaf & Siedzikowski, P.C.
925 Harvest Drive, Third Floor
Blue Bell, PA 19422

Jeffrey S. Cianciulli, Esquire
Weir & Partners LLP
The Widener Building
1339 Chestnut Street
Fifth Floor
Philadelphia, PA 19107

Gloria M. Satriale, Esquire
One McKinley Lane
Chester Springs, PA 19425

George Conway, Esquire
Office of the United States Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107

Slade H. McLaughlin, Esquire
The Beasley Firm
The Beasley Building
1125 Walnut Street
Philadelphia, PA 19104

Peter Hoffman, Esquire
McKissock & Hoffman, P.C.
1818 Market Street
Philadelphia, PA 19103

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| RICHARD PAUL GLUNK, | : | |
| | : | |
| Debtor. | : | Case No. 05-31656-KCJ |

**MOTION TO DISMISS DEBTOR'S BANKRUPTCY CASE PURSUANT
TO 11 U.S.C. §707(a) OF DANIEL H. FLEDDERMAN AND COLLEEN M.
FLEDDERMAN, CO-ADMINISTRATORS OF THE ESTATE OF AMY MARIE
FLEDDERMAN, AND COLLEEN M. FLEDDERMAN IN HER OWN RIGHT**

Daniel H. Fledderman and Colleen M. Fledderman, Co-Administrators of the Estate of Amy Marie Fledderman, and Colleen M. Fledderman in her own right (the "Movants"), by and through their undersigned counsel and for the reasons set forth in the accompanying Memorandum of Law, incorporated herein by reference as if fully set forth, hereby move this Court to dismiss Debtor's bankruptcy case pursuant to 11 U.S.C. 707(a).

WHEREFORE, for all the foregoing reasons, Movants respectfully request that this Court enter the attached proposed Order, and order such other and further relief in Movants' favor as the Court deems appropriate.

Respectfully submitted,

**OF COUNSEL:**

**ELLIOTT GREENLEAF
& SIEDZIKOWSKI, P.C.**

s/ Brian R. Elias
KEVIN S. ANDERSON
BRIAN R. ELIAS
Union Meeting Corporate Center V
P.O. Box 3010
925 Harvest Drive, Third Floor
Blue Bell, PA 19422
(215) 977-1000 - (215) 977-1099 fax

Attorneys for Daniel H. Fledderman and
Colleen M. Fledderman, Co-Administrators
of the Estate of Amy Marie Fledderman, and
Colleen M. Fledderman in her own right

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| RICHARD PAUL GLUNK, | : | |
| | : | |
| Debtor. | : | Case No. 05-31656-KCJ |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS
DEBTOR'S BANKRUPTCY CASE PURSUANT TO 11 U.S.C. §707(a) OF
DANIEL H. FLEDDERMAN AND COLLEEN M. FLEDDERMAN, CO-
ADMINISTRATORS OF THE ESTATE OF AMY MARIE FLEDDERMAN,
AND COLLEEN M. FLEDDERMAN IN HER OWN RIGHT**

**I.        INTRODUCTION**

The above captioned proceeding presents a shocking and abusive misuse of the fresh-start provisions of Title 11 of the United States Code. The Debtor is a physician with a net worth in excess of $3.9 million. He has liquidated, unsecured debts of $7,593.40 representing 0.19442457% of that net worth. He also is contingently liable to Daniel H. Fledderman and Colleen M. Fledderman, Co-Administrators of the Estate of Amy Marie Fledderman, and Colleen M. Fledderman in her own right, Movants herein (collectively, the "Movants"), for the death of their daughter as a result of his medical malpractice. As the trial of Movants' claims finally neared in the Court of Common Pleas of Philadelphia, Debtor filed this chapter 7 proceeding. Clearly, the Debtor's "financial problems" arise solely as a result of this one claim. Debtor obviously has the ability to respond for what he did but, instead, is attempting to hide behind chapter 7 to avoid the consequences of his grossly negligent conduct. This is not what chapter 7 is about. This is an abuse of the bankruptcy system. The Debtor's case must be dismissed.

## II. FACTUAL BACKGROUND

On August 31, 2001, Movants commenced a wrongful death and survival action in the Philadelphia County Court of Common Pleas against, *inter alia*, Debtor based on his gross negligence (*i.e.*, medical malpractice), which resulted in the death of their daughter, Amy. *See* Movants' Complaint, "Exhibit A" hereto. The trial of the of Movants' wrongful death action was scheduled for September 19, 2005. *See* Pretrial Order issued by the Court of Common Pleas of Philadelphia County in the state court litigation attached hereto as Exhibit "B." In a calculated effort to avoid that trial, on August 31, 2005, (the "Petition Date") Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. As a result, the trial of Movants' wrongful death action has been postponed indefinitely because of the automatic stay.

Debtor's bankruptcy schedules and other filings reveal a lavish lifestyle and assets valued at over $5.8 million that Debtor is attempting to protect *via* this sham bankruptcy filing at the sole expense of Movants. Specifically, Debtor identifies the following assets that he owns with his wife:

- a "residence and horse farm" in Malvern, Pennsylvania that Debtor values at $4,750,000.00;
- $179,345.92 in cash deposited in bank accounts;
- $503,610.12 in brokerage accounts; and
- $10,000.00 in household furnishings.

*See* Schedule A. Debtor also identifies $423,441.41 in retirement accounts and $2,600.00 in clothing, jewelry and cash that he owns individually. *Id*.

Debtor's schedules also reveal that Debtor has very little unsecured debt.[1]  Specifically, Debtor identifies a mere $7,096.95 in credit card debt and only $496.45 (jointly owed by Debtor and his wife) owed to Verizon and PECO Energy Company.  *See* Schedule F.  The only other unsecured debt Debtor identified consists of Movants' claims, the amount of which Debtor identifies as "unknown" and classifies as "contingent, unliquidated and disputed."  *Id*.  Further, the Debtor now assumes that the debts owed Verizon and PECO Energy Company of $496.45 have been paid by his wife according to Debtor's testimony at the 341 Meeting of Creditors held on November 10, 2005 before Gloria Satriale, Esquire, the chapter 7 trustee.[2]  Accordingly, as of today, this case involves three creditors – two credit card companies and Movants.

According to the Debtor's schedules, Debtor only receives $1,000.00 in monthly income, yet has monthly expenses of almost $24,000.00.  *See* Schedule J.  Despite Debtor's allegedly modest income, he still managed to pay off almost $11,000.00 in credit card debt within 90 days of the Petition Date, including a $1,200.00 payment to Capital One – a company that Debtor also identifies as an unsecured creditor.  *See* Statement of Financial Affairs at p. 2.  Debtor also gave his son an $11,000.00 "gift" within eight months of the Petition Date.  *Id*. at p. 2.  Additionally,

---

[1] Debtor also lists secured debt totaling $1,975,838.08 virtually all of which is secured by the debtor's primary residence valued at $4,750,000.

[2]     Q. . . .   Have you paid the Verizon bill, by the way? Have you or your wife paid the Verizon bill you've listed on your schedules?

    A.    I would assume my wife did, but I don't know for a fact.

    Q.    Have you paid the PECO bill that you list on your schedules?

    A.    I would assume my wife paid it.

Movants arranged for a court reporter to record and promptly transcribe the testimony from the meeting.  See the Notes of Testimony of Debtor's 341 Meeting of Creditors (hereinafter "N.T.") attached hereto as Exhibit "C."  Page 52 at Lines 10 – 19.

Debtor plans to continue to make his regular $10,736.43 monthly mortgage payments and the monthly payments on his 2004 truck valued at more than $20,000. *See* Statement of Intention.[3]

Despite the Debtor's chapter 7 filing, he continues to drive his leased 2005 Audi automobile and has taken no steps to terminate the lease. N.T. at page 40-41 lines 21-24 and 1-20. In addition to this vehicle, the Debtor and his wife jointly own a 2004 Chevrolet Avalanche truck valued at $20,000 (Schedule B) and his wife owns a Range Rover, Porsche and Mercedes. N.T. Page 42 at Lines 9-11. In short, the Debtor and his wife have five cars although there are only two drivers in his household. N.T. Pages 42 – 43, Line 24 and Lines 1 – 2.

The Debtor likewise has no plans to sell his $4,750,000 home, N.T. Page 40 Lines 2 – 4 or to take his son out of the Haverford School and enroll him in public school despite the fact that the Debtor's schedules reflect that the annual cost for his son's school and camp tuition are $21,000 a year. Schedule J, N.T. Pages 43-44 at Lines 23-24, 1-7.[4]

**III.     ARGUMENT**

Pursuant to 11 U.S.C. 707(a), a bankruptcy court may dismiss a voluntary petition filed under chapter 7 of the Bankruptcy Code "for cause." 11 U.S.C. 707(a). Section 707(a) states:

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only *for cause*, including—
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and

---

[3] Importantly, the creditors that will continue to receive these regular monthly payments are Debtor's only secured creditors. *See* Schedule D.

[4] The tuition for the Haverford School ranges from $16,500 to $21,800 per year according to the school's web site. See Exhibit "D" annexed hereto.

4

> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

*Id*. (emphasis added).

Numerous federal court courts have held that a bankruptcy court should dismiss a bankruptcy petition "for cause if the petitioner fails to demonstrate his good faith in filing." *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000). *See also In re Zick*, 931 F.2d 1124, 1126-1127 (6th Cir. 1991); *In re Lichtenstein*, 328 B.R. 513, 515 (W.D. Ky. 2005); *In re Cappuccetti*, 172 B.R. 37, 38-39 (Bankr. E.D. Ark. 1994); *In re Maide*, 103 B.R. 696, 697 (Bankr. W.D. Pa. 1989); *In re Brown*, 88 B.R. 280, 283 (Bankr. D. Haw. 1988). "[A]lthough the jurisdictional requirement of good faith is not explicitly stated in the statute, it is inherent in the purposes of bankruptcy relief." *Zick*, 931 F.2d at 1129 *quoting In re Jones*, 114 B.R. 917 (Bankr. N.D. Ohio 1990). Despite the lack of a definition of "good faith" in the Bankruptcy Code, courts within the Third Circuit "have uniformly held that '[a]t the very least, good faith requires a showing of honest intention.'" *Tamecki*, 229 F.3d at 207 *quoting In re Marks*, 174 B.R. 37, 40 (E.D. Pa. 1994).

"Once a party calls into questions a petitioner's good faith, the burden shifts to the petitioner to prove good faith." *In re Tamecki*, 229 F.3d at 207. Moreover, once the burden shifts to the petitioner, he must do more than merely show that the provisions of the Bankruptcy Code technically permit his filing. *Id*. at 208. Rather, the petitioner must prove that he availed himself of those provisions in good faith. *Id*.

Some of the numerous factors that courts utilize to determine whether a debtor filed a case in bad faith include:

- the debtor reduced his creditors to a single creditor in the months prior to filing the petition;

5

- the debtor made no life-style adjustments or continued living an expansive or lavish life-style;

- the debtor filed the case in response to a judgment, pending litigation, or collection action; there is an intent to avoid a large, single debt;

- the debtor made no effort to repay his debts;

- the unfairness of the use of Chapter 7;

- the debtor has sufficient resources to pay his debts;

- the debtor is paying debts of insiders;

- the schedules inflate expenses to disguise financial well-being;

- the debtor transferred assets;

- the debtor is over-utilizing the protections of the Code to the unconscionable detriment of creditors;

- the debtor employed a deliberate and persistent pattern of evading a single major creditor;

- the debtor failed to make candid and full disclosure;

- the debtor's debts are modest in relation to his assets and income; and

- there are multiple bankruptcy filings or other procedural "gymnastics."

*Lichtenstein*, 328 B.R. at 515; *Cappuccetti*, 172 B.R. at 39. All of the above factors need not be present in order for a case to be dismissed. *Lichtenstein*, 328 B.R. at 515. *See also Zick*, 931 F.2d at 1128; *Cappuccetti*, 172 B.R. at 39. Rather, "where a combination of the factors is present, courts have held that dismissal is warranted." *Lichtenstein*, 328 B.R. at 515.

The court in *Lichtenstein*, dismissed the debtor's case because it found eight of the 14 factors present. That court, however, specifically concluded that the most significant factor was that the debtor defiantly admitted that he filed his petition to avoid a single debt. *Lichtenstein*,

328 B.R. at 515. Likewise, in *Brown*, the court dismissed the debtor's bankruptcy case principally because the debtor, an ophthalmologist, was using the Bankruptcy Code to avoid paying a medical malpractice judgment. 88 B.R. at 284-285.

In *Cappuccetti*, the district court affirmed the bankruptcy court's order dismissing a chapter 7 petition for lack of good faith filing by the debtors. Specifically, the court concluded that it was "essentially a one creditor case" as the debtor identified only three creditors, one of which – the IRS – constituted ninety percent of the petitioners' total debt. *Cappuccetti*, 172 B.R. at 39-40. Indeed, the court concluded that the debtor filed his petition in response to the IRS' collection efforts. *Id*. at 40. Additionally, the court found that the debtors were living a "luxurious life-style" and made no attempt to reduce their expenses. *Id*.[5] Finally, the court noted that the debtors made a substantial transfer of property to and paid debts incurred by their daughter. *Id*.[6]

Debtor's chapter 7 case is essentially a one debtor proposition. While the Debtor identifies two secured creditors – the mortgagee for his house and the lender for his automobile – the Debtor is not in default under either arrangement. See, e.g. N.T. Page 37, Lines 10-11. And, his mortgagee is oversecured to the tune of more than $2.75 million. The Debtor's scheduled unsecured "burden" of liquidated debts is a staggering $7,593.40 consisting of four debts, two of which (PECO Energy $410.86 and Verizon $85.59) are joint debts of Debtor and his non-debtor wife which the Debtor assumes have now been paid. The other two debts scheduled are Capital One in the amount of $2,757.09 (approximately the same balance that the Debtor paid off with

---

[5] The debtors' luxurious life-style including living in "the most expensive and sought-after housing in the area," membership in a country club and owning two time-share properties. *Id*. at 40.

[6] In addition to the foregoing, the court also found that the debtors' schedules contained numerous inaccuracies and that the debtors had the ability to pay their debts. *Id*. at 40-41.

7

no problem within 90 days of the Petition Date according to the Debtor's Statement of Financial Affairs) and $4,339.86 for another credit card debt. To suggest that these debts, singularly or taken as a whole, became so oppressive as to force the Debtor to file this case (coincidentally on the eve of Movants' long-awaited day in court to vindicate the rights of their deceased daughter who died at the Debtor's hands) is to insult the intelligence of this Court and stretch credulity beyond recognition. In fact, the Debtor stated the following at his 341 Meeting:

> Q. Would you have filed your Chapter 7 case when you did had the Fleddermans not had a claim against you and had it not been about to go to trial?
>
> MS. SATRIALE: If you weren't involved in a lawsuit.
>
> MR. CIANCIULLI [the Debtor's counsel]: Isn't that the primary reason -- one of the primary reasons for filing.
>
> MR. GLUNK: The lawsuit is what's kind of destroying my income. If the lawsuit didn't exist, I'd be making a lot more money so I wouldn't have to file for bankruptcy.

The Debtor's lack of candor concerning this point was evident at his 341 Meeting where he testified as follows:

> Q If the Fleddermans' claim wasn't about to go the trial, would you have filed your case when you did?
>
> A. I don't quite understand the question.
>
> Q. Well, let me ask it this way. Was it the $85 bill for Verizon that pushed you to file your case?
>
> A. It's cumulative.
>
> Q. Is it the total of the approximately $9,000 of the other bills you have that pushed you, forced you to file this case when you did?
>
> A. Like I said, it's a cumulative affect.
>
> Q. And it's just coincidental that you filed 20 days before the trial was to begin?

8

> A. I don't even think that's correct about the date. But the filing date had nothing to do with the file date.
>
> MS. SATRIALE: Counsel, what does your file reflect is the first time Dr. Glunk came to see you in contemplation of bankruptcy?
>
> MR. CIANCIULLI: Well, it's my understanding that Dr. Glunk sought representation with regard to debt counseling in excess of two years ago.
>
> MS. SATRIALE: Has your firm represented him through the process since that time?
>
> MR. CIANCIULLI: Yes.

The Debtor had been seeking debt counseling for two years. His unsecured debt ballooned to less than $10,000 compared with a net worth of almost $4 million. And yet, the filing of his petition for relief on August 31, 2005 "had nothing to do" with the fact that the Fleddermans were finally going to have their day in court twenty days later!

There is but one true claim of any consequence in this case and that is the claim of Movants. Practically, there has never been a more "one-creditor" case than the one before this Court. It is crystal clear that the only reason for the commencement of this case was in response to the imminence of Movants' litigation. This filing constitutes nothing less than a deliberate attempt to evade the only major creditors Debtor faces.

That the Debtor continues to enjoy an expansive and lavish life-style is likewise beyond question. The Debtor continues to live in his $4.75 million primary residence located on his "horse farm" and incur its related $10,736.43 per month mortgage payment and $1,100 per month real estate taxes. The Debtor continues to spend $1,500 per month on clothing,[7] $1,000 per month on recreation, $1,201.19 in monthly car payments, $1,750 per month in private school

---

[7] The Debtor indicated that this was spent by his wife in connection with here "business" as a model. N.T. Page 40 Lines 5 – 15. During 2004, this "investment" generated income of $9,145. N.T. Page 23 Lines 15-16.

and camp tuition for his son and $400 per month in baby-sitting fees. See Schedule J. And, somehow, he asks this Court to accept the propriety of these expenditures in light of the fact that he is earning a mere $1,000 per month from his ownership of 100% of a medical practice – Richard P. Glunk, M.D., LLC.[8] Indeed, it is truly ironic that, because of the stay, the Fleddermans were not able to have their day in court. To date, the Debtor, represented by counsel being paid by his insurance carrier, has vigorously defended the suit and has listed the claim as "disputed." Had the Debtor not filed on the eve of trial, it would have been completed by now and we would all know the extent, if any, of the Fleddermans' claims.

The Debtor's almost $4 million net worth is obviously more than sufficient to deal with his liquidated debts. It is also sufficient to responsibly respond to Movants' claims, particularly in light of the fact that the Debtor also has professional liability insurance covering Movants' claims with a limit of $1.2 million.

In *Zick*, the United States Court of Appeals for the Sixth Circuit aptly noted that the purpose of the Bankruptcy Code is to "serve those persons who, despite their best efforts, find themselves hopelessly adrift in a sea of debt." *Zick*, 931 F.2d 1129 *quoting Jones*, 114 B.R. at 926. "Bankruptcy protection was not intended to assist those who, despite their own misconduct, are attempting to preserve a comfortable standard of living at the expense of their creditors." *Id*. The facts in the instant action lead to the unmistakable conclusion that Debtor is no way "adrift in a sea of debt" and in need of a fresh start. Rather, Debtor has and is continuing to live a lavish lifestyle, and filed his chapter 7 in a bad faith attempt to preserve his luxurious lifestyle all at Movants' expense. Accordingly, Debtor's chapter 7 case must be dismissed.

---

[8] The Debtor's Bankruptcy Schedule B also reflect that he owns an interest in Main Line Plastic Surgery & Laser Associates, Ltd., a Subchapter S corporation through which the Debtor practiced during the 90's through 2001. N.T. Page 51, Lines 14-18. The Debtor claims that this corporation "never had any assets." N.T. Page 52, Line 9.

## IV. CONCLUSION

For all of the foregoing reasons, Movants respectfully request that this Court grant this Motion, dismiss Debtor's case, and grant such other relief in their favor as the Court deems appropriate.

Respectfully submitted,

**OF COUNSEL:**

**ELLIOTT GREENLEAF
& SIEDZIKOWSKI, P.C.**

s/ Brian R. Elias
KEVIN S. ANDERSON
BRIAN R. ELIAS
Union Meeting Corporate Center V
P.O. Box 3010
925 Harvest Drive, Third Floor
Blue Bell, PA 19422
(215) 977-1000 - (215) 977-1099 fax

Attorneys for Daniel H. Fledderman and Colleen M. Fledderman, Co-Administrators of the Estate of Amy Marie Fledderman, and Colleen M. Fledderman in her own right