**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE<br><br>RICHARD PAUL GLUNK,<br><br>    Debtor. | CHAPTER 7<br><br>Case No. 05-31656-KCJ |
| DANIEL H. FLEDDERMAN and COLLEEN M. FLEDDERMAN, Co-Administrators of the Estate of Amy Marie Fledderman,<br><br>    Plaintiffs,<br><br>v.<br><br>RICHARD PAUL GLUNK,<br><br>    Defendant. | Adversary Action No. _____ |

## COMPLAINT TO DETERMINE DISCHARGEABILITY

Daniel H. Fledderman and Colleen M. Fledderman, Co-Administrators of the Estate of Amy Marie Fledderman, Plaintiffs herein, through their undersigned counsel, for their complaint against defendant, allege as follows:

### I.    PARTIES

1.    Plaintiffs Daniel H. Fledderman and Colleen M. Fledderman (the "Plaintiffs") are adult individuals residing at 319 Crum Creek Lane, Newtown Square, Pennsylvania and are Co-Administrators of the Estate of their daughter, Amy Marie Fledderman, Deceased ("Amy").

2.    Defendant Richard Paul Glunk (the "Debtor") is an adult individual residing at 209 Spring Road, Malvern, Pennsylvania 19355, who is the debtor in the above captioned chapter 7 case.

## II. JURISDICTION AND VENUE

3. This matter constitutes an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(6) and is filed pursuant to the provisions of § 105(a) and §§ 523(a)(2) and (a)(6) of the Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 101, *et seq*.

4. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

5. This is a core proceeding in Debtor's bankruptcy case pursuant to 28 U.S.C. § 157(b)(2)(I).

## III. FACTS

6. In May of 2001, Amy consulted with Debtor concerning Amy's desire to lose a few inches around her stomach that remained following a twenty-five pound weight loss over the previous two years.

7. Debtor advised Amy that the fat deposits in her abdomen and under her chin could not be removed by continued exercise, but would require liposuction.

8. Debtor minimized the risks of the liposuction procedure and encouraged Amy to permit Debtor to perform it in an office based setting rather than in a hospital.

9. Debtor told Amy that an anesthesiologist (*i.e.*, a licensed medical or osteopathic physician with years of post professional school special training who specializes in the field of anesthesiology) would attend to her at all times during her surgery and post-operatively during her recovery, along with two nurses.

10. On May 23, 2001, Debtor performed liposuction surgery on Amy and, as a direct result of his actions, Amy died on May 25, 2001.

11. On August 31, 2001, Plaintiffs commenced a suit against Debtor, as defendant, in the Court of Common Pleas of Philadelphia County (the "State Court"), captioned *Daniel H. Fledderman and Colleen M. Fledderman, co-administrators of the Estate of Amy Marie Fledderman, Deceased and Colleen M. Fledderman in her own right v. Richard P. Glunk, M.D., et al*, August Term, 2001, No. 3619 (the "State Court Litigation") to recover damages in excess of Fifty Thousand Dollars ($50,000) based on Debtor's gross negligence, battery, fraud, and willful, intentional and reckless conduct which resulted in the death of their daughter, Amy.

12. A copy of the complaint (the "Complaint") filed with the State Court is attached hereto as Exhibit "A" and the allegations of the Complaint are incorporated herein and made part hereof as if set forth at length herein.

## COUNT I
## EXCEPTION OF DEBT FROM DISCHARGE
## PURSUANT TO SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE

13. Section 523(a)(2)(A) of the Bankruptcy Code provides in pertinent part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt —
>
> (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by —
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement of the debtor's or an insider's financial condition.

14. Debtor made false representations and statements to Amy with the intent to deceive her in that, *inter alia*:

a. Debtor told Amy that an "anesthesiologist" would be present to administer anesthesia and post-anesthesia care to her, notwithstanding that Debtor knew that only a

3

nurse anesthetist would administer anesthesia and post-anesthesia care, not an anesthesiologist;

      b.    Debtor told Amy that she was at zero risk for any complications from the surgery notwithstanding that Debtor knew that such procedure was clearly not without risk, something that became a tragic reality for Amy and the Plaintiffs, particularly because Debtor knew that Amy was at greater risk from complications from anesthesia because she had difficulty emerging from anesthesia two years earlier during another surgical procedure Debtor performed on Amy, although he never told Amy or the Plaintiffs this occurred until after the liposuction surgery;

      c.    Debtor told Amy that she would be as safe having the procedure in his office as she would be if it were done in a hospital notwithstanding that Debtor knew that (I) if the procedure were performed in a hospital he would have been required to have a competent surgeon proctor his actions because of previous mistakes he made in performing abdominal liposuction for other patients, (II) his office was not licensed for surgery as an "ambulatory surgical facility" as required under Pennsylvania law and, therefore, it was unlawful for Debtor to perform the surgery on Amy in his facility, and (III) Debtor's facility was operating in violation of Title 28, Part IV of the Pennsylvania Administrative Code regulating Health Facilities in that Debtor:

    i.    conducted procedures in his facility which substantially exceed the four hours of operating time permissible in such a facility in violation of 28 Pa. Code §551.21(a)(a);

    ii.    conducted surgical procedures in the facility resulting in extensive blood loss in violation of 28 Pa. Code §551.21(d)(1);

    iii.    used laboratory tests results that were not obtained in a timely manner in the facility in violation of 28 Pa. Code §565.3;

4

        iv.        failed to comply with the requirements that any medical evaluation performed by a referring physician be done within a 30-day time period prior to surgery in accordance with 28 Pa. Code §555.22(a)(1);

        v.        failed to comply with the requirements that a practitioner examine the patient immediately before surgery to evaluate the risk of anesthesia and that this information be clearly documented in the record in accordance with 38 Pa. Code §555.22(a)(2); and

        vi.        discharged patients in an unstable condition or whose vital signs had not returned to pre-operative state in violation of 28 Pa. Code §555.24.

d.        Debtor further intentionally failed to advise Amy that his facility:

        i.        was not prepared to initiate immediate onsite resuscitation or other appropriate response to an emergency which may be associated with procedures performed there as required by 28 Pa. Code § 555.23;

        ii.        did not have an effective procedure for the immediate transfer to a hospital of patients requiring emergency care beyond the facilities capabilities as required by 28 Pa. Code § 555.23(d);

        iii.        did not have a written transfer agreement with a hospital which has emergency and surgical privileges available, nor did the physicians performing surgery at the facility have admitting privileges at a hospital in close proximity to the facility to which patients may be transferred as required by Pa. Code § 555.23(e);

        iv.        did not have a written agreement in effect with an ambulance service staffed by certified EMT personnel, for the safe transfer of a patient to a hospital in an emergency situation, or as the need arose as required by Pa. Code § 555.23(f); and

        v.        did not have airways breathing bag and device for the provision of positive pressure rescue breathing (i.e., a mechanical ventilator) as required by Pa. Code § 567.11.

e.        Debtor further exacerbated his deceit by using a "Main Line Health/Jefferson Health System" consent form, suggesting falsely that his facility was associated with and operating under the auspices of a large health system notwithstanding that Debtor was operating a solo practice from an unlicensed facility; and

5

Document    Page 6 of 9

    f. Debtor, by scheduling and performing the surgery, intentionally gave the impression to Amy that he was fully competent to perform the procedure and was under no professional restriction with respect to such activities, notwithstanding Debtor knew that his liposuction privileges at Main Line Health/Jefferson Health System had been limited due to prior inappropriate liposuction surgeries by Debtor which injured other patients and that Debtor could only perform liposuction surgery at Main Line Health Hospitals under the supervision of an experienced practitioner acting as a proctor.

15. Following Amy's surgery, Debtor continued to make false representations and statements to Amy's mother, Plaintiff Colleen Fledderman ("Mrs. Fledderman") in that, *inter alia*, he falsely told Mrs. Fledderman (who was acting as Amy's representative and guardian while she was not able to fully and coherently communicate with Debtor or Debtor's staff) repeatedly after the liposuction that Amy was fine and that her rough emergence from anesthesia was nothing to be concerned with, notwithstanding that there was obvious clinical evidence that Amy suffered from severe bleeding in her neck as manifested by her neck blowing up to twice its size as a result of Debtor's severing a blood vessel.

16. Debtor made the false representations and statements to Amy with the intent to deceive her in order to induce her to permit him to perform surgery on her in his unlicensed facility.

17. Debtor made the false representations and statements to Mrs. Fledderman in order to deceive her into believing that nothing had gone wrong with Amy's surgery, to avoid a commotion in his office to the possible detriment of his practice.

18. Amy relied on Debtor's false representations and statements in deciding to permit Debtor to perform surgery on her in his unlicensed facility.

6

19. Mrs. Fledderman relied on Debtor's false representations and statements in delaying her insistence that Amy be transported to a hospital where she could receive treatment and care that was not available in Debtor's unlicensed office.

20. Amy's death and the damages flowing therefrom were a result of Debtor's false representations and statements to Amy to induce her to permit Debtor to perform surgery on her and to Mrs. Fledderman to induce her to delay involving other medical professionals in treating her daughter.

21. Debtor's representations with respect to the risks of the surgery, the personnel who would be present during the surgery, and the adequacy and propriety of the location in which the surgery would be performed all constituted substantial factors in Amy's choice to allow Debtor to treat her.

22. Amy's death was a proximate result of Debtor's misrepresentations with respect to the personnel who would be present during the surgery, and the adequacy and propriety of the location in which the surgery would be performed as well as his misrepresentations concerning Amy's condition following her surgery and need for care and treatment in a fully equipped hospital setting.

WHEREFORE, Plaintiffs pray that the Court determine that the claim of Plaintiffs claim is nondischargeable; that the Court enter judgment declaring the debt to be nondischargeable and that Plaintiffs have such other and further relief as is just.

### COUNT II
### EXCEPTION OF DEBT FROM DISCHARGE
### PURSUANT TO SECTION 523(a)(6) OF THE BANKRUPTCY CODE

23. Plaintiffs incorporate by reference the averments set forth in Paragraphs 1 through 22 of this complaint as if set froth at length herein.

24. Section 523(a)(6) of the Bankruptcy Code provides in pertinent part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt —
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

25. Debtor failed to provide Amy with a full and complete description of the risks, benefits, and alternatives to the surgery he was going to perform on her.

26. Amy's consent to the liposuction surgery was not based on the requisite informed consent.

27. Debtor's performing surgery on Amy without her informed consent constituted the intentional tort of battery under Pennsylvania law.

28. Debtor knowingly and deceptively performed surgery on Amy in an unlicensed, unlawful facility that violated no less than 11 substantive requirements of the Pennsylvania Administrative Code regulating Health Facilities without the professional proctoring that was required because of his prior below standard level of care.

29. Debtor intentionally deceived Mrs. Fledderman concerning Amy's condition following the surgery.

30. In so doing, Debtor acted deliberately and intentionally in knowing disregard of the rights of Amy.

31. In order to avoid bad publicity, Debtor allowed Amy to languish in his office for more than two and one half hours while she was in respiratory distress and in need of urgent medical care.

32. Debtor knew exactly what he was doing and what he wanted to accomplish by deceiving Mrs. Fledderman *i.e.*, avoiding any commotion or bringing attention to the fact that he mortally injured Amy.

33. Debtor's actions had a substantial certainty of producing the injury and death ultimately suffered by Amy.

34. Debtor's intentional acts in battering Amy and then intentionally delaying her transfer to a hospital despite the obvious critical and life threatening nature of condition proximately caused her death.

WHEREFORE, Plaintiff pray that the Court determine that the claim of Plaintiffs is nondischargeable; that the Court enter judgment declaring the debt to be nondischargeable and that Plaintiffs have such other and further relief as is just.

Respectfully submitted,

**OF COUNSEL:**

**ELLIOTT GREENLEAF
& SIEDZIKOWSKI, P.C.**

s/ Brian R. Elias
KEVIN S. ANDERSON
BRIAN R. ELIAS
Union Meeting Corporate Center V
P.O. Box 3010
925 Harvest Drive, Third Floor
Blue Bell, PA 19422
(215) 977-1000 - (215) 977-1099 fax

Attorneys for Daniel H. Fledderman and
Colleen M. Fledderman, Co-Administrators
of the Estate of Amy Marie Fledderman